Good morning, Your Honours. May it please the Court, I am Stephen Haddon. I am a lawyer in Helena, Montana. I was appointed by Judge Siebel and Billings to represent Andrew Lucero following his conviction for conspiracy to distribute both methamphetamine and marijuana and possession with intent to distribute both methamphetamine and marijuana. I did represent Mr. Lucero in sentencing and was subsequently appointed to represent him on this appeal. The facts, I believe, as we view them, are laid out in our brief to the Court. I want to point out a couple of issues where we see disagreement with the government's position on this appeal. I'd like to start with the venue issue. As we have noted in our brief and in the trial record we have supplied to the Court, the substantive conduct which gives rise to the possession with intent to distribute the marijuana and the possession with the intent to distribute the I believe it's enough under the conspiracy to do that, Your Honour. In fact, this Court has said it enough, even without a conspiracy charge. Let's say you have an assault and battery case, a real simple misdemeanor assault and battery case. A defendant on one side of the state line threw a rock and hit the victim on the other side of the state line. Couldn't the victim's In that scenario, I would have to agree with you, Your Honour, but in this case what we have is an instance where it is alleged Mr. Lucero supplied methamphetamine and marijuana to an individual by the name of Cammy Rex. Cammy Rex then hooked up with another individual. Mr. Lucero was not involved in this process. I do not believe the record reflects that he was. And she and the other individual packaged these drugs up, took them to the post office, and mailed them to Montana. Our position on this, Your Honour, is that Mr. Lucero's conduct with respect to this venue issue ceased when he sold or supplied the drugs to Cammy Rex. And she and another individual, whom at that point took the drugs and mailed them to Montana, Mr. Lucero did not have anything to do with that. Counsel, here's my difficulty with your argument, and maybe you can help me out. As I understand it, the motion to change venue was raised pre-trial and was not renewed later. And in that situation, don't we just look at the face of the indictment and not consider all this later evidence that comes in about stuff going on in Arizona? And if we just look at the indictments, they don't talk much about place, but they do aver that the defendants are residents of Montana. Isn't that all we're allowed to consider because of the timing of your motion? Well, as one told me one time, one never wants to make too many concessions. But I do recognize, Your Honour, that is problematic here. There was a pre-trial motion raised. Following the government's case, it's a fact that there was not another motion raised or the motion was not renewed. Mr. Sikora, the government, has cited the United States v. Aurelius, I'm sorry, my Hispanic pronunciation is not very good, the United States v. Aurelius Arable case in which Mr. Sikora in his argument believes that if the motion is not raised yet prior to the close of the government's case, then it is in fact waived. Well, I'm not saying that it's waived. I'm saying what is it? When we're looking to see whether the judge made a mistake, the only time the judge was asked for a ruling was pre-trial. So we should be looking, it seems to me, at the things that the judge had in the face of the indictment. And what I'm trying to understand from you is why the motion made at that time was wrong at that time based on the indictment. The only answer I have to that, Your Honour, is that the material as it was represented to the court when it was briefed, which was filed by Mr. Sikora, that all of this conduct with respect to venue occurred in Arizona. Judge Siebel, as I read, is ordered, and it's a little dicey, but it appears to me as if Judge Siebel based his ruling upon the conspiracy, claiming that wherever a conspiracy occurs, in any state in which a conspiracy is carried out, in this case that's legitimately Montana, I don't believe he took, went to the second step to say, well, what are we talking about here? Well, the court says the United States alleges that Espinosa lived in Billings, Montana, and distributed drugs in Billings, Montana. And similarly, Lucero's indictment charges him with crimes that he committed in Billings, Montana. What's, did the judge misunderstand the indictment in some way? I can't answer that, but if you go, I guess, on page one of his order, and it is Lucero's record, 5-1, the court's quotes, United States v. Anger and Violence, any conspiracy charge was appropriated in any district where an overactive was committed. That appears to be what Judge Siebel was basing the issue on. Now, again, I must concede that there was not an additional motion raised, there was not a record made of that following the close of the government's case, that hamstrings this matter, but in our view, we believe that it is, has been, the issue has still been preserved because at least there was a pretrial motion which brought it into question. I read the order a little more broadly. He says there, going on from that sentence, he says the United States alleges Espinosa lived in Billings, distributed drugs in Billings, both indictments charge Espinosa with crimes committed in Montana, Lucero's indictment charges him with crimes that each of the two indictments either says, either it's conspiracy or it says it happened at Billings. The only exception is count three of Lucero's indictment, and that says in the state and district of Montana and elsewhere. So it seems like if you just judge venue based on the face of the indictment, it charges crimes in Montana. It does. It does charge crimes in Montana, but our position, your honor, is that the acts which gave rise to these crimes, and I know I'm sounding somewhat like a broker. I know that factually it may well be the case that these people can say, hey, I was just a small-time dealer in Arizona. I didn't know that this lady was running this big interstate conspiracy, but that's for the jury. Yes, and that was never presented, but that's potentially an issue for another day in this case. Let me please the court. I'm Larry Gent. I was appointed by Judge Siebel after trial to represent Mr. Espinoza at sentencing and on appeal. I would like to first address the topic of plain error, and I would refer the court to Rule 103A of the Rules of Evidence, which says once the court makes a definitive ruling on the record admitting or excluding evidence either at or before trial, a party may need not renew an objection or offer a proof to preserve a claim of error for appeal. And this court denoted in United States v. Ogles 406 F. 3rd 586 at page 592 in the footnote that just when a judge makes a ruling on evidence, that doesn't mean that a judge may reconsider the ruling at a later time during the trial. Let's assume for the sake of argument that the prior bad acts evidence, which is I assume where you're going, was admitted erroneously. What prejudice flowed from that admission of evidence? That's a great question, Judge. What prejudice flowed is that the prejudice that already exists just when we start with the caption of the case. This defendant's name is Espinoza. His mother, Josephine Espinoza, otherwise known as Coco, is the kingpin of the conspiracies that are happening in Arizona. Whether the distributor changes or not, Josephine Espinoza is always at the center, the supplier, the organizer, the leader in this conspiracy. And so Chris Espinoza comes in, and he's already got two strikes against him because his last name is Espinoza. It's his mother. And the prejudicial evidence comes in when this kid, Chris, is in high school. And supposedly, and of course I have the same record you did because I didn't try the case, and it's either the mom's car or his car goes over to Rohrbaugh's house. Rohrbaugh, this fellow who has 200-something pounds of uncharged marijuana woven in these two indictments with these two defendants, to paint the car for a small amount of pot while Chris is in high school. Now, if you've got a defendant that's raised whether it's a reasonable doubt defense or whether he testified, in this case he did testify. We've got evidence coming in about painting a car for pot that doesn't have a blessed thing to do with an interstate conspiracy and transportation scheme using this couple named Rex, Jim and Cammie Rex, to transport automobile marijuana from Arizona to Montana. Or a mail scheme where they have the package. Remember, this is a controlled delivery case. That's how they get caught. There's controlled delivery where the package shows up and it gets detected and they bust these people. Totally different. And it's while Mr. Espinoza is a minor. And then, so that's very prejudicial. But the fact that it is so different and the fact that the judge gave cautionary instructions would suggest that it isn't prejudicial if it's not the same and if there are cautionary instructions. Right. And Judge, I'd like to address on the issue of cautionary instructions. The cautionary instructions, except in two instances, don't have anything. We got a problem here because not only do you have two defendants, now you've got two indictments and you've got separate conspiracies over here in the penumbra of this case, out in the field someplace, where this fellow Rohrbaugh is getting big chunks of marijuana. And those cautionary instructions do not tell the jury this is only introduced because the government wants to prove this issue. For example, a pattern or the fact that, say, a defendant denies that he knows these people. And we want to show that he does have knowledge. And the judge doesn't say that he doesn't restrict them to defend it or to indict. I don't have a problem with your waiver argument. It seems to me you lose on the in limine unless the judge invites you to renew it. You've lost. However, when I get to the merits, our review is for abuse of discretion. And I have trouble seeing that the judge abused his discretion. Here's why. The prejudice strikes me as, frankly, not overwhelming at all. The fact that it happened while the kid was a minor strikes me as very helpful in setting up a defense of blaming everything on his mother. And a lot of facts support that kind of defense. And the probative value really is significant. So while judges might differ on whether they've let it in, it's hard to see why it's an abuse of discretion. And I'd like to address the probative value first, Judge, because this circuit has a four-part test, which, as you know, is set forth in my brief. And the first part of that test is a test of materiality. And just as an aside, I had the dubious distinction as a second-year law student of writing footnotes on Wigmore and evidence on materiality. The only thing I remember from that is that's the same thing. It means the same thing as relevance. And what are we fighting about in this case that this evidence helps us prove? We don't know. I mean, is there an issue about people painting cars as part of the scheme? Well, his knowledge is an issue, and it doesn't have to be disputed for the government to be able to prove it. In other words, they have to prove his participation and his knowledge. So doesn't it go to that? Judge, if the point is material, if it's placed an issue, now given if he pleads not guilty, every element of the crime is placed an issue. But there's no specific element that it's relevant to when the government has proof by other means that it can use. 404B evidence can't be impermissibly admitted to bolster a weak government case when it doesn't meet the four-part test. First, we see if it's inextricably intertwined, and it's not. That's a given. That's already been decided at the trial level. So we know it's definitely, all parties agree it's 404B evidence. The question is whether it should come in or not during the test. And is it material? Is it too remote a time? Those four things come up. And what we have here is incidents a long time before for an insignificant amount of pot in one instance compared to the whole scheme. And we have evidence of Rohrbaugh's dealings, 404B evidence about him, uncharged dealings. And yet when you look at what Espinoza's dealings are, they're very minimal. And if you've got a case, a minimalist case, where the defendant is a tangential player, that's when the prejudice from Rule 404B is the most dramatic. In the cases that I've cited, and I won't go into discussing individual ones, talk about the problems of prejudice are compounded when you have multiple defendants and you have multiple counts. And in this case, you have multiple indictments. Two different grand juries on a separate occasion came forth with two different indictments with different times. And basically, one of them is a marijuana conspiracy. The other one is a meth conspiracy with a little bit of marijuana that happens to be in there. And the chance for confusion is paramount. And that's where the prejudice is, Judge. The confusion that the jury would have sorting these people out, all of these things that don't have anything to do with the elements of proof. And that's one of the reasons it's not material. It doesn't have anything to do with relevant evidence. The thing that's an issue is whether, getting back to the indictments, that this defendant committed the elements of this indictment. And I don't see the materiality that occurs from the roar ball transactions in this indictment. And so, in the four-part test, the government first has to get past that test. But if they do, if the evidence gets in, then the judge still has to instruct the jury with what to do with it. And those instructions aren't adequate. How do we know what indictment? Before we talk about counts, I've been in trials where the judge says, this information has to do with count two only. You may not consider it with other counts. Well, we got two different indictments and we got two different defendants. And the trouble with this type of evidence in front of a jury is that they tend to lump all these people together and that they have a propensity to deal in some sort of illegal substance. And that's what's wrong with the judge's ruling in totality of circumstances. And that's why you should reverse this case and give Mr. Espinoza a new trial. I don't have any more questions. Thank you, Counsel. Good morning once again, Your Honor. Jim Sikora, Assistant U.S. Attorney. If I may just take a half a minute of my argument. I've been practicing for about 35 years now and this is the second time I've been able to argue in this courtroom. It's a magnificent courtroom. If there's any way that, I think I speak to the way from Montana, get the wheel to get us to Portland a little bit more. Not indefinitely Seattle. This is a wonderful courtroom. Well, we're happy to be back in it, too. You like being here, too. There is a fire in the fireplace, not lit, but I wanted to thank you for that, if I may. If I may start out with a thing. Help me on this 404B stuff. I always worry a little bit when a prosecution, and I'm not talking about this one or you, proves that the defendant is a sleaze instead of proving that the defendant committed the crime charged. Why did the evidence of other bad acts tend to prove that the defendant was guilty of the crime charged in this case? Well, I think the history of this case is kind of renowned without going. It's not renowned to me. I never heard of it before. Well, I mean, this goes back to the, this case, the Ninth Circuit has decided that Hernandez case, Pedro Hernandez, this is a seminal case beginning back in the 90s. It started up. There's a series of conspiracies, the last of which was, as counsel indicated, the other co-conspirator in this case, Justine Espinoza, who is the mother of Chris Espinoza. And just for a few moments, she was convicted, fled guilty, and before she went to prison in August of 98 is when she concocted this other conspiracy with her son, with Lucero, to get this thing going, to set him up in business, so when she goes to prison, Bureau of Prisons, in August, that it continues. Once again, juries, I think, are smart enough to understand the cautionary instruction. And I think it's difficult for a trial judge to, I'm kind of torn in a 404B. It's kind of like, listen up, jury, this only deals with the $100,000 load that's coming. I think it behooves itself that you give a germane, generic 404B so that you're not calling attention to any one particular person, and that's why you ask for cautionary instruction. I just think it works. It would be great for the United States if we asked the judge to do that. This is why we're putting it in with only this load. It's germane. It's antiseptic. Could you summarize for me, specifically in this case, what the other bad act's evidence was and how it tended to prove guilt that the crime was charged? There was very little. It showed that Chris Espinosa was involved with his mother previously, showing that he was painting. He did give pound quantities, which in and of itself shows knowledge, motive, intent, to have quantities of marijuana available to him. We're not talking dime bags. We're talking multiple pound quantities. Wait a minute. He painted a car and got a pound of marijuana. Someone else. He painted. He received. Take us back to the beginning and tell us what you think the evidence is and why it's relevant to show his conspiracy in this case. He was involved in marijuana in Billings as a teenager when he actually was involved in painting the car. I've got to look back specifically in relation to that. Forget involved and all those conclusions. Facts. Espinosa's son painted a car. For whom? Another one of the co-conspirators. And got a pound of marijuana. Correct. Where's the evidence that he knew that marijuana came from his mother so that when he took the stand later and said, I don't know anything about my mother in being in drug business, that this impeached him? I don't know that 404B necessarily shows that he has to establish that it came from his mother's conspiracy, that he was involved in marijuana, but in fact, he in fact had dealt with all of it. The fact that when he was a teenager, he got paid for painting a car with marijuana is probative that later, when he's some years later, he was involved as a conspirator in packaging and shipping marijuana. Pound quantities of marijuana with methamphetamine to Montana. What's the logical relation between those two? I mean, did he ship the first, when he got the marijuana? He was... Pardon me. When he got the marijuana for painting the car, did he turn that into a business or did he use the marijuana? Is there any evidence? He was involved with his mother in the prior... Involved with his mother. Let's talk about the marijuana he got for painting the car. Right. What did he do with that marijuana? What's the evidence of that? I don't think we established what he did with that marijuana. So what you got is that he got paid for painting a car with marijuana in 1996 or 1997 and some years later, he was in, quote, involved in shipping marijuana with his mother. One year later, Your Honor. One year later. So the fact that he got paid with marijuana for painting a car means that he is a trafficker in marijuana later on. No, it doesn't. It knows that he knows the parties that the co-conspirators were working with his mother, Shane Rohrbach, Cammy Rex, and all these other people were working in concert. It wasn't only that one pound of marijuana for the car. He was actually involved in that earlier uncharged conspiracy also with his mother. He knows his mother. He'd know his mother independently of that. I'm sorry, Your Honor. He'd know his mother independently of this. He didn't have to be involved with marijuana to know his mother. That's correct. And Rohrbach, let's see, was Rohrbach involved in the conspiracy charge? He was involved in the earlier conspiracy and the present conspiracy, making trips, multiple trips. So what you're showing is acquaintance with Rohrbach and the ability to, within the confines of the co-conspirators, to deal with how quantity is of marijuana. And was there evidence that Rohrbach got his marijuana from Josephine Espinoza? Rohrbach testified. That he got... Regarding the one pound, Your Honor. About the one pound that he got from Espinoza? I can't say that it is. And I think regarding that 404B, that was, once again, a cautionary instruction. No objection. It was a brief interlude. It was not argued. He was putting the proper context in the case in which... I don't think the problem is the terms of the instruction. I thought the issue they were raising was admission of the evidence for the abuse of discretion. That's standard, Your Honor. Right. Judge Siegel allowing it. That's right. You keep talking about the form of the admonition, and we keep asking about the admission of the evidence. I wanted to make sure we're on the same track. I understand. I understand. The other admissions of the 404B, I think, are set forth in the brief. If the Court wants to go through each one of them, I don't think the one pound is necessarily on the other end of the spectrum. The evidence is overwhelming with Chris Espinoza and Louis Cyril. Regarding that... Just make it easy for us. Summarize what the evidence of other bad acts was and how it tended to prove guilt of the crimes charged. That's to both defendants. That's just to Louis Cyril, Your Honor. Why don't you make it easy for us for both? I mean... That's fine. I just want to answer the Court's question. Try to preserve your convictions. I understand. Make it easy. I want to answer the Court's question. I just... Mr. Louis Cyril was involved in a previous conspiracy. His mother testified in relation to... Louis Cyril's mother or Espinoza's mother? Espinoza. I apologize. Espinoza's mother. Let's get the names right. I apologize. Start again. It was difficult in calling a mother who actually didn't provide all the exact information in the trial record that shows that in relation to her son. But we had Kami Rex testify. We had Shane Roebuck testify about other involvement of Chris Espinoza in setting up these deals, not only the charged one, but the earlier ones, Your Honor, which was not a charged conspiracy, which goes to the knowledge of Chris Espinoza, the existence of a marijuana conspiracy, the movement of marijuana to the Billings, Montana area at an earlier time. I'm losing you, Counselor. The specific question I think we're trying to deal with is why getting a pound of marijuana for painting a car is evidence that a year later he was involved in trafficking in marijuana with his mother. By the purpose of himself being able to control whether he smoked it, whether he delivered it, a pound quantity of marijuana, which is a distributable quantity of marijuana, his ability, whether it be per chance or not, lack of mistake, to deal it later, Your Honor. Is there any evidence that the marijuana that he was given came from his mother and he knew it? No. All right. Do you want to address the venue point? Yes, if I may. Specifically, the statute, 18 U.S.C. 3287, was not cited, but it's cited within the case that we talk about, which basically says that, in fact, the venue is appropriate for something began or concluded. And we believe that the case that we cited regarding the reading of the face of the indictment, looking at it, it is charged with the District of Montana. It's charged Billings. But then in the conclusion, I think the Court should take the position that, in fact, it was not renewed. And one of the reasons it was not renewed, because the evidence was in, it was pretty clear that the parties were involved in this, that they knew it was coming to Montana. And, in fact, it was not an issue that would actually float, even if it was renewed, Your Honor, as to the venue, as to these particular parties. And that's why one of the issues that was placed in evidence of Mr. Lucero having been to Montana previously on a drug delivery with Josephine Espinosa, which was 404B, cautionary instruction was given. He claimed he'd never been to Montana. They actually had a videotape of him in Montana that was played to the jury. Josephine Espinosa, COCO, testified that he was with her when she delivered a trunkload of marijuana to Montana earlier on, which went to the ability to show that he had the knowledge, motive, intent, his ties into the other co-conspirators in the present existing conspiracy. Do you wish me to talk about the sentencing issues, Your Honor? Yes, please. Regarding the methamphetamine, the position counsel indicates that when the court did not do a proper quantification, the United States position is it set forth that the court, under the many most recent cases, did a proper calculation of the guidelines. The United States actually submitted it at the time of sentencing. We believe that you can find relevant conduct up to 75 ounces of methamphetamine. Judge Siebel said, no, I'm only going to take what the jury found, 262.5 grams of a mixture of methamphetamine. He then, using subnote capital B in 2D1.1, which says, if in fact you have a purity, use the purity versus the mixture. And he raised the base level offense from 28 to 30. Going hand-in-hand with all the cases and applying the 18 U.S.C. 3553A, looking at all of this, and using the guidelines once again as advisory, Judge Siebel noted that. He noted that the 30 is just a technical error. We put it on. He found all of this at sentencing, he says, beyond doubt. So no matter what standard you're applying, I think he found beyond a reasonable doubt that particular issue. He found the base level offense 30. He found two for the gun based upon testimony. He once again has set forth in our brief and in the record, says, I have no doubt. He then found the leadership position for four additional points for leadership. Once again, he says, I have no doubt. And it was ticked off as to the number of people that were involved in the leadership and then the continuing aspect of the conspiracy, even after it was taken down in August of 98. And then the additional two points for obstruction of justice were given to Mr. Lucero in regard to this. Once again, Judge Siebel found without any doubt that this occurred. I believe the sentencing under whatever format occurred is appropriate under the circumstances. There's no need for remand if, in fact, all of the other issues were determined by this court to be proper. Thank you. Thank you. May it please the court, Shane Rorbaugh and the charged conspiracies never dealt directly with Chris Espinoza. Second, the government's argument seems to be that if one is somehow, quote, involved in the past, ergo, one must be, quote, involved. Now, that's exactly the same argument as it's saying if a person committed a similar crime in the past, they must be committing a similar crime now. And that is, by definition, propensity. And that's why the evidence should not have been admitted.  Thank you, Counsel.
judges: Kleinfeld, Graber, Bea